FILED
COURT OF APPEALS
DIVISION II

2013 JUL 23 AM 9: 15

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42901-2-II |
| Respondent, | |
| v. | |
| DOANH QUOC NGUYEN, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P.J. — Doanh Quoc Nguyen appeals his jury trial convictions for one count of first degree identity theft, four counts of first degree theft, five counts of forgery, and one count of second degree theft. He argues that (1) the trial court erred when it admitted an "affidavit of fraud," which constituted improper opinion evidence of his guilt; and (2) he received ineffective assistance when his counsel failed to object to this exhibit as improper opinion evidence. We affirm.

### FACTS

#### I. THEFT AND FORGERY

From spring 2006 through January 2007, Doanh Quoc Nguyen worked as an in-home caregiver for an elderly couple, Frances and Robert Clay Griffin.[1] Mrs. Griffin regularly paid

---

[1] Mr. Griffin suffered from Parkinson's disease and diabetes; he required more physical care than Mrs. Griffin was able to provide alone.

Nguyen his wages with checks drawn on one of her Columbia Bank checking accounts. In early January 2007, Nguyen told the Griffins that he was going to visit family in Wyoming; but he actually returned to his native Vietnam.

On January 20, shortly after Nguyen's departure, Mrs. Griffin discovered that four checks payable to Nguyen, which she had not written, had cleared one of her Columbia Bank checking accounts. These four checks had been made out in the amounts of $9,300, $5,700, $4,000, and $2,600. With her banker's assistance, Mrs. Griffin completed an affidavit of fraud, in which she swore that she did not write these checks and stated her "belie[f] that Doanh Nguyen [was] responsible for the fraud"; she signed the affidavit of fraud "under penalty of perjury." Ex. 11. At some point, a fifth check that Mrs. Griffin had not written was discovered; this check, also payable to Nguyen, was drawn on another Griffin checking account for $500.41. All five checks had been deposited into Nguyen's Bank of America account.

After Mrs. Griffin's daughter Annette Ilene Fender,[2] reported the possible fraud, Lakewood Police Officer Andrew Hall investigated, met with Mrs. Griffin at her home, and spoke to her about the checks. Hall compared the writing on the questioned checks to Mrs. Griffin's handwriting and noticed they were different. Observing that the questioned checks had been deposited into a Bank of America account, Hall obtained a search warrant for the related bank records. He then unsuccessfully attempted to contact Nguyen. A warrant was issued for Nguyen's arrest.

---

[2] Fender was Mr. Griffin's stepdaughter. Fender lived in Florida.

A year later, in January 2008, Mr. Griffin passed away. Two years after Mr. Griffin's death, in December 2009, Mrs. Griffin suffered a "massive stroke." 1 Verbatim Report of Proceedings (VRP) at 62. Nguyen returned to the United States in May or June 2010; officers arrested him when he arrived at Sea-Tac International Airport. A year later, Mrs. Griffin passed away, in May 2011.

## II. PROCEDURE

The State charged Nguyen with one count of identity theft, five counts of forgery, four counts of first degree theft, and one count of second degree theft.[3] The case proceeded to a jury trial.

### A. State's Evidence

At trial, the State presented testimony from Fender, employees from the Griffins' bank and Nguyen's bank, a handwriting specialist, and the police officer who investigated the crimes.

#### 1. Fender

Fender testified about her parents' conditions, their hiring and employment of Nguyen, and her mother's discovering the forged checks after Nguyen had departed. Fender also testified that when the Griffins had employed Nguyen, her mother (Mrs. Griffin) was in charge of the couple's financial affairs and she (Mrs. Griffin) had been unwilling to allow Fender to take over this responsibility, despite Fender's concerns about her mother's ability to manage her finances properly. Soon after Nguyen left, Mrs. Griffin had called Fender in hysterics, told Fender "that

---

[3] The State also alleged two aggravating factors for each offense: (1) that Nguyen had used a position of trust to facilitate the offenses, and (2) that the victims were particularly vulnerable. Nguyen raises no issues on appeal related to these aggravating factors.

she [(Mrs. Griffin)] was missing money," and asked Fender if she knew "anything about it." 1 VRP at 51. Fender told Mrs. Griffin to go to her bank "and just stop everything on her account"; about a week later, Fender flew out to assist her mother. 1 VRP at 52.

Upon Fender's arrival, she noticed that her mother had not balanced her checking accounts for some time, which was not unusual. Fender took her mother to her bank, where they "discovered" several checks that Mrs. Griffin "didn't or couldn't remember writing"; at this time, Mrs. Griffin's memory was "[p]retty good." 1 VRP at 53. All of the questionable checks had been written to Nguyen; but they did not appear to be his paychecks and the signature on the checks did not appear to be in Mrs. Griffin's handwriting. Examining State's exhibits 2 through 6, the non-paychecks made out to Nguyen for $4,000.00, $2,600.00, $5,700.00, $9,300.00, and $500.41, respectively, Fender testified that each check was made payable to Nguyen but that none of the signatures were in her mother's handwriting.

### 2. Other State witnesses

During Hall's testimony, the following exchange occurred:

> [STATE] And did [Mrs. Griffin]—or at some point, did you develop a suspect in the case?
> [HALL] I did.
> [STATE] And who was that?
> [HALL] That's the defendant. I believe it's Doanh Nguyen.

2 VRP at 164. Nguyen did not object to this testimony.

Jennifer Vitzthum, a Columbia Bank fraud investigator, testified that (1) the only people authorized to sign on any of the Griffins' bank account checks were Mrs. Griffin, Mr. Griffin,

and Fender; (2) all five checks in question had been "cleared" or "paid" by Columbia Bank,[4] and (3) Mrs. Griffin had identified the first four of these checks as "fraudulent" in her affidavit of fraud.[5]  1 VRP at 96-97.

Kimberly Clanton, a Columbia Bank customer service representative, testified that she regularly assisted Mrs. Griffin and that she was the person Mrs. Griffin had contacted when she discovered the fraudulent checks.  Clanton had helped Mrs. Griffin complete the affidavit of fraud, which Clanton characterized as "something that a customer fills out at the bank, and they're making a statement saying that they didn't write these checks."  2 VRP at 149.  Clanton identified exhibit 11 as the affidavit of fraud she had helped Mrs. Griffin complete.  Nguyen did not object to the trial court's admission of this exhibit.

Brett Bishop, a Washington State Patrol Crime Lab forensic scientist and "[h]andwriting expert[ ]," testified that after examining about 300 checks written on the Griffins' bank accounts, Bishop concluded that (1) "Frances Griffin *probably* did not write [any of the five] questioned checks and [they] are probably simulations," and (2) it appeared that someone had been trying to copy her writing.  1 VRP at 116 (emphasis added).[6]  Having compared the writing on these checks to Nguyen's writing, Bishop testified that the person writing the checks had been

---

[4] Columbia Bank, however, did receive from Nguyen's bank a $5,831.19 partial reimbursement on the $9,300.00 check.  Bank of America returned these funds without Nguyen's involvement when received Columbia Bank's notification that the $9,300.00 check was fraudulent.

[5] The fifth check, for $500.41, had been drawn on a different Columbia Bank checking account.

[6] Because of the poor quality of the check copies available for his review, Bishop could not say, however, that it was "*highly* probable" that Mrs. Griffin had not written these checks. 1 VRP at 130 (emphasis added).

attempting to sign someone else's signature, and "the writing characteristics in themselves [were] disguised"; thus, he could neither identify nor exclude Nguyen as the writer. 1 VRP at 119.

### B. Defense Case

Nguyen was the only defense witness. He admitted to having forged the $5,700 and $9,000 checks, asserting that he had needed the money to help his pregnant wife in Vietnam and that he had intended to repay the Griffins. But he denied having written the other three checks. Instead, he testified that the $4,000 check had been a loan to him from the Griffins and that the $2,600 check covered a week's salary of $1,000 and a $1,600 repayment for his having purchased a computer for Mrs. Griffin to give to her grandson.[7] Nguyen, however, produced no documentation to show that he had purchased this computer. Nor could he explain another $4,000 check that Mrs. Griffin had written to him 15 days after the $4,000 check at issue. Similarly, Nguyen did not attempt to explain the $500.41 check.

### C. Closing Argument, Jury Instruction, Jury Question, and Verdict

In closing, the State argued that Nguyen had admitted his guilt as to (1) the first degree identity theft charge; (2) the first degree theft charges related to the $9,300 and $5,700 checks; and (3) the forgery charges related to the $9,300 and $5,700 checks. In discussing the remaining charges, the State argued:

---

[7] Fender testified that her mother had given her "great grandchild" Isaiah Griffin a computer that Christmas 2006.

First of all, [Mrs. Griffin] herself, obviously is not here. [She] is not in the courtroom to testify; however, she did fill out an affidavit of forgery, and this is the affidavit of forgery that she filled out with Kim Clanton, her banker, and as Kim Clanton said this affidavit of forgery does not get filled out unless the customer is absolutely positive that these checks have not been written or drawn by them with their permission. They being Robert and Frances Griffin. So in this case, Frances Griffin does get to speak and she does get to speak through this business record. You'll see her signature on the back, and again, with Kim Clanton's testimony, this is the very few words that Frances Griffin will at least be able to say in this courtroom that I did not do this. *She also says in here that she believes Mr. Nguyen did it.*

3 VRP at 280-81 (emphasis added). Nguyen did not object to this argument.

The trial court instructed the jury, "You are the sole judges of the credibility of each witness." Clerk's Papers (CP) at 26 (Jury Instruction 1). During its deliberations, the jury sent the trial court the following question: "Can we have the Affidavit of Fraud for [the $500.41] check, . . . ? If not, is there a reason this was not completed by Francis?" Suppl. CP at 148. The trial court responded: "You have all of the exhibits that were admitted. The testimony will not be repeated." Suppl. CP at 148.

The jury found Nguyen guilty of one count of identity theft, four counts of first degree theft, five counts of forgery, and one count of second degree theft. It also found both aggravating factors for each offense. Nguyen appeals his convictions.

ANALYSIS

Nguyen argues that (1) the trial court erred in admitting Mrs. Griffin's affidavit of fraud because this document was improper opinion testimony about his guilt; and (2) alternatively, if we hold that he failed to preserve this error, his counsel's failure to object to the trial court's admission of the affidavit of fraud was ineffective assistance. Even presuming, but not deciding,

that this is a constitutional issue,[8] we do not reach this argument because Nguyen fails to show that the alleged error was manifest, as required for the RAP 2.5(a)(3) exception to the preservation requirement.

We agree with Nguyen that a witness may not give an opinion or state a personal belief that the defendant is guilty. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). But here, even assuming without agreeing that Mrs. Griffin's affidavit of fraud was the equivalent of unconstitutional impermissible opinion testimony about Nguyen's guilt, Nguyen fails to show that any potential error "caused actual prejudice or practical and identifiable consequences." *Montgomery*, 163 Wn.2d at 595 (citing *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007)).[9] Furthermore, other strong evidence and the jury's verdict—that Nguyen was also guilty of charges *not related to the checks listed in Mrs. Griffin's affidavit*—show that the affidavit of fraud was not the determinative factor here.

In addition to Mrs. Griffin's affidavit of fraud, the investigating officer presented live testimony about his own conclusion that Nguyen had forged the questionable checks; and Nguyen did not challenge this testimony. Each of the five questionable checks had been made

---

[8] "Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007) (citing *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001); *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)).

[9] Relying on *Montgomery*, 163 Wn.2d at 596, n.9, Nguyen argues that the jury's question to the trial court during the jury deliberations demonstrates that the jury relied on the affidavit of fraud in finding him guilty. Br. of Appellant at 10. Here however, unlike *Montgomery*, the jury question does not show that the jury's verdict was dependent on Mrs. Griffin's specific accusatory statement in her affidavit of fraud.

payable to Nguyen and deposited into his bank account; and Nguyen admitted having forged the two larger checks. And Fender, the investigating officer, and the handwriting expert all testified that it did not appear that Mrs. Griffin had written any of the five checks at issue because the handwriting did not look like hers; instead, it looked like someone was trying to copy her handwriting. Furthermore, the trial court instructed the jury that it was solely responsible for determining Nguyen's guilt. We presume that the jury followed the trial court's instructions. *Kirkman*, 159 Wn.2d at 937. Given the evidence and the jury instructions, we hold that Nguyen has failed to establish the trial court's admission of the affidavit caused actual prejudice or any other practical and identifiable consequences. *Montgomery*, 163 Wn.2d at 595. Accordingly, we decline to reach Nguyen's improper opinion argument.

Nguyen also argues that his trial counsel provided ineffective assistance in failing to object to the admission of Mrs. Griffin's affidavit of fraud. To establish ineffective assistance of counsel, Nguyen must show both deficient performance and prejudice. *State v.* Grier, 171 Wn.2d 17, 32-33, 249 P.3d 1260 (2011). Based on the facts we discuss above, we hold that Nguyen fails to show that the affidavit's admission was prejudicial. Accordingly, his ineffective

No. 42901-2-II

assistance argument also fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Penoyar, J.

Bjorgen, J.